# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SHAKIR MITCHELL, #450-764, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PX-18-933 |
| NBCI WARDEN FRANK B. BISHOP, JR.,[1] | * | |
| COMMISSIONER OF CORRECTIONS DAYENA CORCORAN,[2] | * | |
| MATTHEW HILL, MICHAEL OATES, | * | |
| DAVIS, SMITH,[4] | * | |
| Defendants | * | |

## MEMORANDUM OPINION

Pro se Plaintiff, Shakir Mitchell, an inmate at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, brings this action alleging that he has been subjected to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution arising from his confinement in a "contingency" cell for several days. Mitchell also alleges that Defendants retaliated against him for filing civil suits against corrections officers. ECF No. 1, pp. 2-3. As relief, he seeks an order prohibiting the use of contingency cells as well as compensatory damages. Id. p. 4.

---

[1] The Clerk shall amend the docket to reflect the full and correct spellings of Defendants' names consistent with this caption.

[2] Corcoran served as Acting Commissioner of Correction from April 8, 2016 until May 16, 2016, at which time she became Commissioner of Correction, a position she held until her retirement on August 31, 2018. ECF No. 16-4, p. 1, Janifer Decl.

[4] Defendant Oates appears not to have been properly served. *See* ECF No. 22. Defendants "Davis" and "Smith" could not be identified by the prison Litigation Coordinator and so were not served. All claims as to Oates, Davis and Smith are dismissed without prejudice.

Defendants Warden Frank B. Bishop, Jr., former Corrections Commissioner Dayena Corcoran, and NBCI Correctional Officer Matthew Hill ("Defendants") move to dismiss the Complaint or alternatively for summary judgment to be granted in their favor. ECF No. 14. Mitchell opposes the motion. ECF No. 17. The court has carefully reviewed the pleadings and finds no hearing is necessary. *See* Loc. Rule 105.6. As to Defendants Bishop and Corcoran, the Court GRANTS summary judgment in their favor. As to Defendant Hill, the Court DISMISSES the Complaint without prejudice for failure to exhaust administrative remedies.

**I.    Background**

The record evidence, construed most favorably to Mitchell, chronicles the following events. On September 13, 2017, Officer Michael Turner responded to the cell of inmate James Young. *See* ECF .No 14-4, p. 4. En route to Young's cell, Turner passed Mitchell's cell, at which time Mitchell told Turner to "not be harassing his brother." *Id.*

Early the next day, as Officer Hill opened the security slot of Mitchell's cell to collect food trays, Mitchell threw a liquid substance from his cell. *See* ECF 14-4, p. 4. At the time, Turner was on the lower level of the tier discussing an issue with the food tray involving another inmate. *Id.,* ECF 14-4, p. 4. Turner heard someone yet "now!" coming from the direction of Mitchell's cell; immediately thereafter Turner was struck with a liquid substance. *Id.,* p. 4. Mitchell admits that he threw trash out of his cell onto the tier and that some of the contents may have splashed on a correction officer's uniform. ECF No. 17-1, pp. 8-9; ECF No. 14-4, p. 8. Corrections officers searched Mitchell and his cell but found nothing incriminating or of evidentiary value. ECF No. 14-6, Hill Decl., ¶ 5.

Corrections officer Hill, as an eye witness, charged Mitchell with a prison infraction for throwing a "correctional cocktail" consisting of spoiled milk, urine and feces on Officer Michael

Turner. ECF No. 1, p. 3; ECF No. 14-6, Hill Decl., ¶4. As part of the internal investigation (IID Case No. 17-35-01835), investigators obtained and observed prison video surveillance. Id., pp. 4, 9. Mitchell was placed in Administrative Segregation in a single cell and on Staff Alert status pending an adjustment hearing. ECF No. 1, pp. 4-7; ECF No. 14-6, Hill Decl., ¶ 7; ECF No. 14-7, p. 1, Daily Events Log; ECF No. 14-8, p. 1; ECF No. 14-9.

While in Administrative Segregation, prison staff assessed Mitchell after 24 hours and again after five days for whether he could be returned to general population. ECF No. 14-7, p.2; ECF No. 14-8, p. 2. On September 20, 2017, Mitchell left segregation. ECF No. 14-11, p. 1. Although the cells used for Administrative Segregation are certainly not pleasant, the Defendants submit documentation explaining the penological and safety reasons for not equipping the interior of the cells with switches, intercom speaks, mirrors, and fire suppression sprinkler heads. ECF No. 14-16, Iser Decl., ¶ 5.

On September 25, 2017, Mitchell filed an Administrative Remedy Procedure (ARP), asserting that he had been falsely accused of throwing a milk carton "with contents" on staff, wrongly subjected to a strip and cell search, and moved to a "contingency cell" where he was denied food, medication and showers. He further averred that while he was in a "contingency cell," staff threw his food on the floor, the cell was dirty and bug-infested, and he was forced to use his hands and socks to clean himself when he used the toilet. ECF No. 14-22, pp. 2-3.

On September 29, 2017, the ARP was accepted for filing and assigned a case number. ECF No. 14-22, p. 2. Although the ARP initially was deemed "withdrawn" five days later, Mitchel successfully challenged the withdrawal on the grounds that his signature had been forged. ECF No. 14-22, p. 1; ECF No. 17-1, p. 8. Yet inexplicably, Mitchell failed to pursue his grievance by resubmitting his ARP or appealing the matter to the Commissioner of Correction and the Inmate

Grievance Office ("IGO"). ECF 14-23, Hassan Decl., ¶ 3. Instead, Mitchell next filed suit in this Court.

## II.     Standard of Review

Because the parties have submitted evidence outside the four corners of the Complaint and have been given reasonable opportunity to present all pertinent material, the Court will treat the motion as one for summary judgment. See Fed. R. Civ. P. 12(d). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment shall be granted if the movant demonstrates that no genuine issue of disputed material fact exists, rendering the movant entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(d). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "The party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of [his] pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *See Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The Court must view the evidence in the light most favorable to the non-movant and draw all inferences in his favor without weighing the evidence or assessing witness credibility. *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). Factually unsupported claims and defenses cannot proceed to trial. *Bouchat,* 346 F.3d at 526.

## III.    Analysis

### A.     Administrative Exhaustion under the PLRA

Defendants first assert that summary judgment in their favor is warranted because Mitchell has not exhausted administrative remedies prior to filing suit, as required by the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e,   The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Prison conditions encompass "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 Fed. Appx. 253 (4th Cir. 2004).

Administrative exhaustion under § 1997e(a) is neither jurisdictional nor does it impose a heightened pleading requirement on the prisoner. Rather, it is an affirmative defense that Defendants must plead and prove. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005). That said, exhaustion is mandatory, and the Court may not consider unexhausted claims. *See Bock*, 549 U.S. at 220. *See also Ross v. Blake*, __ U.S. __, 136 S. Ct. 1850, 1857 (2016). Ordinarily, the Court cannot excuse a prisoner's failure to exhaust the claims. *Ross*, 136 S. Ct. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")). However, defects in the exhaustion process "procured from the action or inaction of prison officials," will not bar the claims. *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

DPSCS's grievance system for "inmate complaint resolution" is provided by statute and regulation. *See* Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S."), §§ 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.02.28.02(1) (defining ARP). The grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a). Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the

[DOC] against any officials or employees of the [DOC] arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(7). "A court may not consider an individual's grievance that is within the jurisdiction of the [Inmate Grievance] Office or the Office of Administrative Hearings unless the individual has exhausted the remedies" set forth in C.S. Title 10, Subtitle 2. C.S. § 10-210(a).

All Maryland prisons adhere to the same established administrative remedy procedure. COMAR 12.02.28.01 *et seq.* First, the prisoner must file an initial ARP with the facility's "managing official" within 30 days from the date of the incident or 30 days from the date the prisoner first learned of the incident or injury giving rise to the complaint. COMAR 12.02.28.02(D)(1); COMAR 12.02.28.09(B). The "managing official" is "the warden or other individual responsible for management of the correctional facility." COMAR 12.02.28.02(B)(14).

If the managing official denies or fails to respond to the prisoner's initial ARP, the prisoner must next appeal the ARP to the Commissioner of Corrections within 30 days. COMAR 12.02.28.14(B)(5). If that appeal is denied, the prisoner must next file a grievance with the IGO either within 30 days from the Commissioner's denial or, if the Commissioner did not respond, 30 days after the response was due. C.S. § 10-206(a); COMAR 12.02.28.18; COMAR 12.07.01.05(B).

When appealing to the IGO, a prisoner must include a copy of the initial ARP, the Warden's response, the appeal filed with the Commissioner of Correction, and the Commissioner's response. *See* COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see also* COMAR 12.07.01.06(B). An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. *See* C.S. § 10-207(b)(2)(ii). However, if the IGO deems a hearing

necessary, it takes place before an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208; COMAR 12.07.01.07-.08.

The purpose of this exhaustion procedure is to allow the prison the opportunity to address deficiencies "before being subjected to suit," thereby "reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Bock*, 549 U.S. at 219; *see Moore*, 517 F.3d at 725. A prisoner is thus expected to pursue all phases of the exhaustion process prior to initiating suit. *Chase*, 286 F. Supp. at 530; *Gibbs v. Bureau of Prisons*, 986 F. Supp. 941, 943-44 (D. Md. 1997); *see also Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo*, 286 F.3d at 1024 (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

When viewing the evidence most favorably to Mitchell, the record indisputably shows that Mitchell did not exhaust his administrative remedies. Although Mitchell had demonstrated that his initial ARP grievance had been wrongfully "withdrawn," he never refiled the ARP or otherwise pursued his grievance through each stage of review. Mitchell abandoned the process prematurely, thwarting the purpose of administrative exhaustion. Accordingly, the claims cannot proceed in this Court.

Nor can Mitchell save the claims by exhausting administrative remedies while this case is pending. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds).

Rather, the Complaint will be dismissed without prejudice for failure to exhaust administrative remedies. To the extent Mitchell exhausts his remedies, he is free to refile his claims.

B.  **Claims as to Defendants Bishop and Corcoran**

Even if Mitchell had exhausted his administrative remedies, the claims nonetheless fail as to Defendants Bishop and Corcoran for different reasons. Construing the Complaint and record evidence most favorably to Mitchell, nothing establishes that either Defendant personally participated in the conduct about which Mitchell complains. It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love–Lane v. Martin,* 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983). Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001), *quoting Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

Supervisory liability may attach under § 1983 if a plaintiff establishes: (1) "that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) "that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) "that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks citations omitted).

No record evidence establishes that either Commissioner Corcoran or Warden Bishop played any role in the incident involving Mitchell's confinement in Administrative Segregation. Thus, because no evidence establishes a basis for supervisory liability, Mitchell cannot succeed on his claim against Corcoran and Bishop. Summary judgment is granted as to them.

**IV. Conclusion**

Unidentified Defendants "Davis" and "Smith" are dismissed without prejudice, as is Defendant Oates. The Complaint is dismissed without prejudice for failure to exhaust administrative remedies, and summary judgment is entered in favor of Defendants Corcoran and Bishop, who played no role in the events giving rise to Mitchell's claims. A separate Order follows.

Date: 8/28/19                                              /S/
                                                           Paula Xinis
                                                           United States District Judge